UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA RING | : | Civil Action No. 1:10-cv-179-SJD |
| Plaintiff, | : | Judge Susan J. Dlott |
| vs. | : | **DEFENDANT ROTO-ROOTER SERVICES COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS ALTERNATIVE MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |
| ROTO-ROOTER SERVICES COMPANY, | : | |
| Defendant | : | |

## I. INTRODUCTION

As set forth below, in the alternative to the relief Roto-Rooter requested in its separate motion to dismiss, the Court should transfer this case to the Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice. In her Memorandum in Opposition to Defendant's Motion to Transfer venue (Doc. 14) (the "Memorandum in Opposition"), Plaintiff relies exclusively on the Affidavit of Sandra Findeiss (the "Findeiss Affidavit") to argue that employment practices are created and enforced in Cincinnati and that relevant documents are located in Cincinnati. As set forth in the Declaration of Chana Stewart-Blalark (the "Stewart Declaration"), filed separately, most of the statements in the Findeiss Affidavit are flatly wrong, and other statements are completely irrelevant to the determination of venue. As set forth more fully below, among other factors supporting transfer, all alleged discriminatory acts occurred in Missouri, all parties and witnesses are located in Missouri, all relevant employment records are located in Missouri, and the Missouri court has a greater interest in litigating this purported discrimination action.

1

## II. ARGUMENT

It is undisputed that Courts apply a two-part test when evaluating a motion to transfer venue pursuant to 28 U.S.C. § 1404(a): (1) whether the action "might have been brought" in the transferee court; and (2) whether the balance of convenience and justice requires transfer. *Candela Management Group, Inc. v. The Taco Maker, Inc.*, No. 2:08-CV-1138, 2009 WL 2983074, at *6 (S.D. Ohio Sept. 11, 2009); *Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002). Here, both prongs of the test require transfer to the district court for the Eastern District of Missouri.

### A. The Action Could Have Been Brought, And Was In Fact First Brought, In The District Court For The Eastern District Of Missouri.

In her Memorandum in Opposition, Plaintiff does not dispute that this action might have been brought in the Eastern District of Missouri, Eastern Division, and that she previously brought a substantively identical action in that court. She dismissed it shortly after a certain judge was assigned to it. Therefore, Roto-Rooter undisputedly satisfies the first prong for transfer pursuant to 28 U.S.C. § 1404(a).

### B. The Balance Of Conveniences And Justice Requires Transfer Of Venue.

In her Memorandum in Opposition, Plaintiff recognizes the relevant factors to consider when balancing the interests of convenience and justice, but Plaintiff fails to separately evaluate each factor. A close examination of each private and public factor requires transfer of this case to the Eastern District of Missouri, Eastern Division.

1. **The Private Interest Factors Require Transfer To The District Court For The Eastern District Of Missouri.**

   a. **Plaintiff's Forum Preference.**

Plaintiff's choice of forum in Ohio is entitled to no deference because (1) the underlying claim occurred in another district, (2) Ohio is not Plaintiff's first choice of forum, and (3) Ohio is not Plaintiff's state of residence. *See Kay v. National City Mortgage Co.*, 494 F. Supp.2d 845, 850, 852 (S.D. Ohio 2007); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1314. (E.D. Pa. 1982); *Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-CV-358, 2009 WL 3259423, at 5 (S.D. Ohio Oct. 8, 2009).

In her Memorandum in Opposition, Plaintiff ignores this case law and, instead, simply asserts that her newest choice of forum is entitled to deference. (Memo. in Opp. at pp. 3, 5.) While Plaintiff does accurately state the general rule, the above case law provides multiple exceptions, all of which apply to this case. Therefore, this factor weighs in favor of venue in the Eastern District of Missouri.

   b. **Defendant's Forum Preference.**

In her Memorandum in Opposition, Plaintiff simply argues that this venue is "convenient" for Roto-Rooter because it is the venue of Roto-Rooter's corporate headquarters. (Memo. in Opp. at p. 5.) Plaintiff ignores that the key management personnel involved in any decision whether to promote Plaintiff are all located in Missouri. (Tranchilla Decl., ¶¶ 2, 9.; Stewart Decl., ¶¶ 11, 12.) Accordingly, this factor weighs in favor of venue in Missouri.

   c. **Where the Claim Arose.**

Plaintiff's claim clearly arose in Missouri. Plaintiff alleges she was, at all relevant times, employed by Roto-Rooter in St. Charles, Missouri. (*Id.* at ¶¶ 14, 17.) Any decision whether to promote Plaintiff would have occurred in Missouri. (*See* Tranchilla Decl., ¶¶ 3, 9; Stewart Decl.,

3

¶¶ 7, 8, 11, 12, 18, 20, 23.) In fact, Ms. Findeiss was Plaintiff's general manager for a time and failed to promote her then. (Stewart Decl., ¶ 9.)[1] Further, any alleged conversation with Mr. Maloney regarding promotion opportunities would have occurred in Missouri. (*See* Complaint, ¶ 33; Tranchilla Decl., ¶ 9.)

In her Memorandum in Opposition, Plaintiff appears to argue that the claim arose in Ohio because relevant employment practices were created and enforced in Ohio, and Plaintiff relies on the Findeiss Affidavit. Plaintiff states that Roto-Rooter is wrongly attempting to "dictate how Plaintiff will develop and try this case" and that her argument centers on class-based allegations, not just on allegations of misconduct against Plaintiff. (*See* Memo. in Opp. at 5).

Plaintiff's argument fails for three reasons. First, Plaintiff argues that the claim arose in Ohio because the policies applicable to the putative class were developed in Ohio. However, when determining venue, courts look only at those allegations that concern discrimination against the named plaintiff, not allegations concerning a putative class. *Cook v. UBS Financial Services, Inc.*, No. 05 Civ. 8842, 2006 WL 760284, at * 6, n.2 (S.D. N.Y. Mar. 21, 2006) ("The law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives"); *Smith v. Burlington Northern Santa Fe Railway Co., Inc.*, No. 06-2151, 2006 WL 3192545, at *2 (D. Kan. Nov. 1, 2006). Here, the allegations concerning Plaintiff all arise out of employment decisions in Missouri, the office in which she worked.

Second, as set forth in the Stewart Declaration, the Findeiss Affidavit on which Plaintiff relies misstates multiple key facts. While Ms. Findeiss has visited the Cincinnati office "eight or nine times" in the last 20 years, she was never employed at the Cincinnati Office. (Stewart

---

[1] Both Ms. Findeiss and Plaintiff share the same counsel.

Decl., ¶ 4.) Ms. Stewart has been employed by Roto-Rooter in the Cincinnati Office for almost nine years and now oversees the entire Human Resources Department and, therefore, is imminently more qualified than Ms. Findeiss to provide testimony regarding the records and activities at the Cincinnati Office. Based upon the following declarations of Ms. Stewart, this action clearly arose in Missouri:

- Branch-level decisions include the type of positions for which the branch will hire, the number of positions it will hire, and the individuals it will hire to fill those positions. (Stewart Decl., ¶ 7.)

- Rick Maloney is currently the General Manager of the St. Louis North Office. Thus, Mr. Maloney is Plaintiff's General Manager. As a branch General Manager, Mr. Maloney is solely responsible for hiring decisions with respect to all non-management level positions at the St. Louis North Office. With respect to the two management level positions at the St. Louis North Office, Mr. Maloney recommends promotional opportunities to Roto-Rooter's West Regional Vice President, Steve Tranchilla. Mr. Tranchilla works in the St. Louis South Office. Therefore, hiring decisions in the St. Louis North Office are made at a branch level for non-management positions and at the regional level for two management positions. Other than with respect to hiring decisions for General Managers and Field Training Managers, positions for which Plaintiff never applied, and other than with respect to review of very few background checks . . . the Cincinnati Office has no involvement whatsoever in the hiring decisions for the St. Louis North Office. (*Id.* at ¶ 8.)

- In paragraph 7 of her Affidavit, Ms. Findeiss inaccurately stated that policies and procedures she was "required" to implement were issued or facilitated through the corporate headquarters. To the contrary, the Regional Manager and the General Manager have broad discretion in their enforcement of any company policy. With respect to the St. Louis North Office, Regional Manager Mr. Tranchilla and General Manager Mr. Maloney have discretion in their enforcement of any policy. Such policies and procedures include but are not limited to scheduling policies, vehicle policies, cell phone policies, safety training procedures, truck stocking and inventory procedures, procedures for management control, and policies for turning in money for the calculation of employee compensation. Therefore, there is a vast

5

degree of decision-making with respect to policies and procedures that occurs at each branch level. (*Id.* at ¶ 10.)

- Contrary to Ms. Findeiss' assertions in paragraph 9 of her Affidavit, hiring decisions are made at the branch level. Thus, hiring decisions for the St. Louis North Office are made at the St. Louis North Office, with approval of Mr. Tranchilla in the St. Louis South Office for management level positions. Importantly, none of the hiring or promotional decisions relating to the employment of Plaintiff required approval of any manager or employee in the Cincinnati Office. Plaintiff indicates she had an interest in a Sales Manager position. Hiring decisions for that position would be made at a branch level, and may involve regional level approval of Mr. Tranchilla. (*Id.* at ¶ 11.)

- In paragraph 10 of her Affidavit, Ms. Findeiss inaccurately states that the great majority of Roto-Rooter's information pertaining to hiring and promotion of Roto-Rooter employees is located at the corporate headquarters, and national policies and procedures regarding employment decisions are located at the corporate headquarters. Again, Ms. Findeiss is wrong. As set forth above, any hiring decisions with respect to Plaintiff occurred at the branch or regional level with no input from the Cincinnati Office whatsoever. (*Id.* at ¶ 12.)

- Ms. Findeiss' makes misrepresentations in paragraph 15 of her Affidavit. A person promoted to a management position at Roto-Rooter is not required to interview at the Cincinnati Office. Only General Managers are interviewed at headquarters, and Plaintiff does not claim to have applied for such a position. Field Training Managers are interviewed by telephone. Plaintiff does not claim to have applied for such position. All other management positions only require interviews by the General Manager at the branch. Such management level positions at the St. Louis North Office would require an interview by Mr. Maloney, not an interview at corporate headquarters. (*Id.* at ¶ 18.)

- In paragraph 16 of her Affidavit, Ms. Findeiss inaccurately states that any postings for a management position are posted at the Cincinnati Office. This is wrong. The Cincinnati Office only posts positions to be filled at the Cincinnati Office. For positions that would be filled at the branch level, only the branch would decide whether to post the position, at the discretion of the branch General Manager. (*Id.* at ¶ 19.)

- In paragraph 19 of her Affidavit, Ms. Findeiss inaccurately states that no offer of employment is tendered to even the lowest

   level employee or management without approval, ratification, and authorization of corporate headquarters. In fact, other than as discussed in Paragraph 13 above, the Cincinnati Office has no involvement whatsoever in the hiring decisions of non-management level positions. In addition, offers for employment as a General Manager are made at the regional level (here, by Mr. Tranchilla in the St. Louis South Office), and offers for all other management level positions occur at the branch or regional level. (*Id.* at ¶ 20.)

   •  In paragraph 29 of her Affidavit, Ms. Findeiss inaccurately states that Rick Maloney and Steve Tranchilla were following national corporate policy with respect to hiring decisions regarding Plaintiff. As set forth above, all hiring decisions with respect to Plaintiff were made at the branch level, which was at the St. Louis North Office. Any decision to hire or promote Plaintiff involved no input or approval of the Cincinnati Office. (*Id.* at ¶ 23.)

Thus, the declaration of Roto-Rooter's Director of Employee Relations, who has been employed in the Cincinnati Office almost 9 years, demonstrates that this claim did not arise in Cincinnati but, instead, arose in Missouri. Because Ms. Findeiss' "generalized assertions are specifically contradicted by" the Stewart Declaration, the Court should resolve any inconsistencies in their testimony in favor of Roto-Rooter. *See Cook*, 2006 WL 760284, at * 4.

  Third, Plaintiff has previously *admitted* that her claim arose in Missouri. In her Missouri Action, Plaintiff averred that "[t]he unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Missouri, Eastern Division." (Missouri Action Complaint, ¶13.) The employment practices alleged in the Missouri Action are identical to the employment actions Plaintiff now alleges in this Court. Accordingly, the claim in this action arose in the Eastern District of Missouri, and this factor weighs in favor of transfer to the Eastern District of Missouri.

### d. The Convenience of the Parties.

In her Memorandum in Opposition, Plaintiff does not dispute that her home state is more convenient than Ohio. Plaintiff simply argues that Ohio is convenient to Roto-Rooter because individuals in charge of promotions are located in Ohio.

However, as set forth above, any decisions with respect to whether to promote Plaintiff occurred at the branch or regional level with first Ms. Findeiss, then Mr. Maloney or Mr. Tranchilla. (Stewart Decl., ¶¶ 7, 8, 9, 11, 12, 18, 20, 23.). Thus, the relevant party witnesses are located in Missouri. (*See* Stewart Decl., ¶ 8.) Accordingly, the Eastern District of Missouri is more convenient for all parties, and this factor weighs in favor of transfer to the Eastern District of Missouri.

### e. The Convenience of Witnesses

In her Memorandum in Opposition, Plaintiff argues that Roto-Rooter has only established Missouri as a more convenient forum for a "small smattering of witnesses," and that unnamed individuals who have the power to set unnamed corporate policies would be located in Ohio.

Plaintiff's argument fails for at least two reasons. First, Plaintiff has failed to identify by name a single witness located in Ohio. All witnesses who have been identified by Plaintiff reside in or adjacent to Missouri. Plaintiff's speculation of the existence of witnesses in Ohio is insufficient to tip the balance of this factor in her favor.

Second, the unnamed "corporate executives who oversaw" alleged discrimination are not appropriate witnesses to consider when determining venue. (See Memo. in Opp. at p. 5.) This issue was addressed in *McFadgon v. The Fresh Market, Inc.*, No. 05-2151, 2005 WL 3879037 (W.D. Tenn. Oct. 21, 2005). In *McFadgon,* an employee filed a class action on behalf of a nationwide class against his employer under Title VII alleging race discrimination. *Id.* at *1.

8

The employer moved to transfer the action to the venue of its corporate headquarters, but the court denied its motion because all alleged unlawful employment activities occurred in the venue where the plaintiff worked in Tennessee. *Id.* at *2. The employer argued that its corporate officers may be called to testify, since the plaintiff brought the action on behalf of a nationwide class; thus, transfer was appropriate for the convenience of witnesses. *Id.* The court stated that "[a]t this stage of the litigation, it is not clear why the testimony of corporate officials, who presumably had no personal involvement in any decision about Plaintiff's employment, would be necessary or appropriate." In refusing to transfer to the corporate headquarters, the court noted that "[t]he fact that Plaintiff purports to bring a class action has no bearing on this analysis, as no class has been certified and no motion for class certification is pending." *Id.* at n.1.

Like in *McFadgon*, any Roto-Rooter "corporate executive" "had no personal involvement in any decision about Plaintiff's employment." *See* 2005 WL 3879037, at *2. Other than with respect to hiring decisions for General Managers and Field Training Managers, positions for which Plaintiff never applied, and other than with respect to review of very few background checks, the Cincinnati Office has no involvement whatsoever in the hiring decisions for the St. Louis North Office. (Stewart Decl., ¶ 8.) Hiring decisions for the St. Louis North Office are made at the St. Louis North Office, with approval of Mr. Tranchilla in the St. Louis South Office for management level positions. (*Id.* at ¶ 11.) Importantly, none of the hiring or promotional decisions relating to the employment of Plaintiff required approval of any manager or employee in the Cincinnati Office. (*Id.*) Plaintiff indicates she had an interest in a Sales Manager position. Hiring decisions for that position would be made at a branch level, and may involve regional level approval of Mr. Tranchilla. (*Id.*) Put differently, "any hiring decisions with respect to

9

Plaintiff occurred at the branch or regional level with no input from the Cincinnati Office whatsoever." (*Id.* at ¶ 12.)

### f. Location of Books and Records.

In her Memorandum in Opposition, Plaintiff relies on the Findeiss Affidavit to argue that relevant records are located in Ohio, including payroll records and employee records. (Memo. in Opp. at p. 6.)

Plaintiff's argument again fails. First, the Findeiss Affidavit is replete with misstatements regarding the location of relevant records. Other than performance appraisals for General Managers, a position for which Plaintiff did not apply, all other employment appraisals are maintained at the branch or regional level; here, with Mr. Tranchilla or Mr. Maloney. (Stewart Decl., ¶ 14.) Surveys and employee information sheets are also maintained at the regional level, rather than at headquarters. (*Id.*) Benefit related documents (other than life insurance beneficiary designations forms) are kept at the branch or regional level. (*Id.*) Contrary to Ms. Findeiss' representations in paragraph 13 of her Affidavit, salary records are maintained at the branch office (here, St. Louis North) rather than the Cincinnati Office. (*Id.* at ¶ 15.) Data for payroll records is created and input into Roto-Rooter's accounting system at the branch level. Hours are tracked and weekly time reports are created based upon information provided at the branch level. The amount of hours worked by employees is documented at the branch level. (*Id.* at ¶ 16.) Other than initial hiring data, Plaintiff's employment records are all located in either the St. Louis North or the St. Louis South Office. (*Id.* at ¶ 24.) Thus, all employment records relevant to the alleged unlawful employment practices are maintained and administered in Missouri. (*Id.*) These records, to the extent that they exist, would include Plaintiff's personnel file, any performance appraisals, any disciplinary counseling notes, any relevant internal

10

memoranda, any acknowledgement of receipt of the employee handbook, any acknowledgement of the corporate ethics policy, any acknowledgement of the company's harassment policy, any customer complaints, any pay documents, and any deduction or benefit elections. (*Id.*)

Second, even if some general employment records are maintained in Ohio, the "relevant" records are located in Missouri. This issue was addressed in *Middlebrooks v. England*, No. Civ. A. 05CV0556, 2005 WL 3213956 (D. D.C. Nov. 2, 2005). In that case, a plaintiff brought a Title VII action in the District of Columbia against the Secretary of the Navy alleging discrimination based on race, color, gender and national origin, and the Secretary sought to transfer the action to the district where the plaintiff was employed. *Id.* at *1. The court noted that, although records relating to plaintiff's general employment were maintained in the District of Columbia, "all records relating to the alleged discrimination, including performance appraisals, disciplinary counseling notes and relevant internal memoranda, [were] maintained and administered in her local personnel file in Bethesda, Maryland." *Id.* Because the records "relevant" to plaintiff's complaint were administered and maintained in Maryland, not the District of Columbia, the court concluded the plaintiff failed to prove proper venue in the District of Columbia. *Id.*

Like in *Middlebrooks*, even if some general employment records are kept at Roto-Rooter's corporate headquarters, the more specific employment records are located in Missouri. In fact, just like in *Middlebrooks*, any of Plaintiff's performance appraisals, disciplinary counseling notes and relevant internal memoranda (to the extent they exist), would be maintained and administered in her local personnel file in the St. Louis North Office. (Stewart Decl., ¶ 24.) In fact, prior to the time that Plaintiff filed her Complaint with the EEOC, the Cincinnati Office did not maintain any file whatsoever regarding the Plaintiff. (*Id.* at ¶ 25.) Any file on the

Plaintiff was created only in response to the EEOC complaint, and all other records specifically relating to the Plaintiff are located in Missouri. (*Id.*) Accordingly, this factor weighs in favor of transfer to the Eastern District of Missouri.

### 2. The Public Interest Factors Require Transfer To The District Court For The Eastern District of Missouri.

#### a. Enforceability of the Judgment.

The parties agree that this factor is neutral.

#### b. Practical Considerations to Make Trial Easy, Expeditious or Inexpensive.

Trial would be much easier, expeditious, and inexpensive if tried in the Eastern District of Missouri. Because all witnesses are located in or adjacent to Missouri, the parties would not incur unnecessary witness fees for travel. Moreover, Roto-Rooter employees would not be forced to unnecessarily miss work to provide trial testimony. Plaintiff has not provided any competing practical considerations to weigh in favor of retaining the action in this Court. Accordingly, this factor weighs in favor of transfer to the Eastern District of Missouri.

#### c. Relative Administrative Difficulty Resulting from Court Congestion.

In her Memorandum in Opposition, Plaintiff does not provide the Court with any competing statistics to suggest that this Court's docket is less congested that the docket of the Eastern District of Missouri. Instead, Plaintiff states that the "case loads are comparable." (Memo. in Opp. at p. 6.) Plaintiff is wrong. An actual comparison of the dockets shows that the Eastern District of Missouri has approximately 20% fewer pending cases than this Court, making it substantially less congested than this Court's docket. Accordingly, this factor weighs in favor of transfer to the Eastern District of Missouri.

12

### d. Local Interest in Deciding Local Controversies at Home.

In her Memorandum in Opposition, Plaintiff alleges that this Court has a strong local interest based upon the corporate policies of Roto-Rooter. (Memo. in Opp. at p. 7.) Plaintiff states, "Despite the fact that this is a nationwide class action, Defendant is fixated on believing that this case is only about a Missouri resident and Missouri citizens." (*Id.*)

Again, Plaintiff's argument fails because she improperly argues that venue is appropriate based on a purported class; yet, she has not moved for class certification, and no class has been certified. *See Cook*, 2006 WL 760284, at * 6, n.2; *Smith*, 2006 WL 3192545, at *2; *McFadgon*, 2005 WL 3879037 at *2, n.1. Instead, Missouri "by any fair reading of the allegations [in Plaintiff's Complaint] constitutes the locus of the allegedly unlawful activities undertaken by [Roto-Rooter]." *See Barham v. USB Fin. Servs.*, 496 F. Supp.2d 174 181 (D. D.C. 2007)(quoting *Cook v. UBS Financial Services, Inc.*, No. 05 Civ. 8842, 2006 WL 760284, at * 5 (S.D. N.Y. Mar. 21, 2006)). Accordingly, this factor weighs in favor of transfer to the Eastern District of Missouri.

### e. Public Policies of the Fora

Plaintiff does not dispute that this Court has expressed a public policy against forum shopping. *See Svete v. Wunderlich*, No. 2:07-CV-156, 2009 WL 3028995, at 5 (S.D. Ohio Sept. 16, 2009); *Hall v. National City Bank*, No. 2:07-CV-168, 2007 WL 2572239, at *2 (S.D. Ohio Aug. 31, 2007). Plaintiff further does not dispute that she originally filed this action in the Eastern District of Missouri and, upon the assignment of a new judge, dismissed her action and refiled it in this Court. Plaintiff does not offer any competing public policy that would weigh in favor of retaining this action in this Court. Accordingly, this factor weighs in favor of transfer to the Eastern District of Missouri.

13

    **f.**  **Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases.**

The parties agree that this factor is neutral.

   **3.**  **A Balancing of Factors Weighs in Favor Of Transfer.**

Balancing the private and public interests, it is clear that the Eastern District of Missouri provides a much more convenient forum for the litigation of this dispute. Plaintiff's choice of forum is not entitled to deference because she is not an Ohio resident and, as Plaintiff initially recognized in the Missouri Action, the operative facts underlying the claim are all alleged to have occurred in Missouri. All alleged discriminatory acts occurred in the St. Charles, Missouri office of Roto-Rooter, and all promotional recommendations with respect to Plaintiff were made in that office. All relevant parties and witnesses are located in or adjacent to Missouri, and all relevant employment records are located in Missouri. The Eastern District of Missouri's docket is less congested than the Southern District of Ohio, and the Eastern District of Missouri has an interest in litigating this discrimination action brought by its own citizen. Plaintiff's attempt to refile this action in this Court after the judge's assignment in the Eastern District of Missouri is a blatant effort to forum shop that is against the public policy of this Court and should not be condoned. After consideration of all public and private factors, not one single factor weighs in favor of retaining the action in this Court. Accordingly, pursuant to 28 U.S.C. § 1404(a), this Court should transfer this action to the Eastern District of Missouri, Eastern Division.

**III. CONCLUSION**

As set forth in Roto-Rooter's separately filed Motion to Dismiss, the Complaint should be dismissed for failure to state a claim, or the Complaint should be dismissed or transferred because Plaintiff brought the action in an improper venue. As set forth above, as an alternative

14

to dismissal or transfer under 28 U.S.C. § 1406(a), this Court should transfer this case to the District Court for the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses and in the interest of justice.

Respectfully submitted

/s/ *Gregory A. Harrison*
Gregory A. Harrison (0029814)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
513/977-8200 - Telephone
513/977-8141 - Facsimile
greg.harrison@dinslaw.com

*Trial Attorney for Defendant*
*Roto-Rooter Services Company*

Of Counsel:

Ian P. Cooper
Melanie Gurley Keeney
Daniel J. Rhoads
TUETH KEENEY COOPER
MOHAN & JACKSTADT, P.C.
34 N. Meramec, Suite 600
St. Louis, MO 63105
(314) 880-3600
(314) 880-3601 facsimile
icooper@tuethkeeney.com
mkeeney@tuethkeeney.com
drhoads@tuethkeeney.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Mark Kitrick
KITRICK, LEWIS & HARRIS CO., L.P.
515 East Main Street
Suite 515
Columbus, OH 43215
mkitrick@kitricklaw.com

John Campbell
Erich Vieth
THE SIMON LAW FIRM
701 Market Street
Suite 1450
St. Louis, MO 63101
jcampbell@simonlawpc.com
evieth@simonlawpc.com
and

Michael J. Fagras
LAMPIN, KELL, FAGRAS, LINSON,
CUSTER & BUEHLER
5770 Mexico Road
St. Peters, MO 63376
MFagras@hotmail.com

/s/ *Gregory A. Harrison*

1776381v2